{¶ 39} I respectfully dissent, as I believe there is insufficient evidence to sustain Werfel's conviction. Werfel did not engage in a pattern of conduct during the relevant period (February 5 through March 31, 2006) that he knew would cause Manley to believe that he would cause her physical harm or mental distress. *Page 12 
 {¶ 40} It is clear that the threat to kill Manley was not communicated directly to her, but through a third person, to wit, Withrow, and then a fourth person, to wit, the corrections officer to whom Withrow reported the threat. I do not believe that R.C. 2903.211 can be construed to encompass such indirect threats of physical harm. On a prior occasion, this court has reversed the conviction of an appellant who expressed her criminal thoughts to a third party without communicating those thoughts directly to the intended victim. State v. Chmiel (Sept. 26, 1997), 11th Dist. No. 96-L-173, 1997 WL 663316. In that case, this court held:
 {¶ 41} "Without a threat made known to the potential victim or her family, a key element of both the aggravated menacing and menacing by stalking statutes is missing. The thoughts alone of appellant were insufficient to result in a conviction." Id. at *2. See, also,Paulus v. Rucker, 11th Dist. No. 2002-P-0080, 2003-Ohio-2816, at ¶ 18-19.
 {¶ 42} Even if it would be permissible for an indirect threat to be the basis of a menacing by stalking conviction, there is no evidence that Werfel had knowledge that his statement would ultimately reach Manley. In this matter, Werfel made a statement to his cellmate in the Lake County Jail. The cellmate relayed this information to a corrections officer. That corrections officer then informed Manley of the comment. The evidence suggests Werfel intended his comment to stay in the confines of his jail cell. Accordingly, there was insufficient evidence that Werfel acted knowingly, i.e., that he was aware his comment would probably reach Manley and cause her distress.
 {¶ 43} Thus, the only remaining incidents for consideration are those that occurred on February 5 and February 7, 2006. On February 5, 2006, Werfel was in the jail vestibule "showing off." An officer told him to leave. He did leave, but then he *Page 13 
returned 45 minutes later and stayed the rest of the night. At no time during the remainder of the night did Manley or anyone else ask Werfel to leave the vestibule area. In the early morning, Manley opened the door to the lobby of the jail, permitting Werfel to enter the lobby area. At that time, he dropped the "eyeball" in the slot beneath her window and, then, left the building. The fact that Manley, herself, opened to door allowing Werfel to enter the lobby area deflates her assertion that she felt threatened by him on that occasion.
 {¶ 44} On February 7, 2006, Werfel was outside the jail building when Manley came to work. He did not say anything to her and other officers escorted her into the building. Thus, he had no direct contact with her on February 7, 2006.
 {¶ 45} Also on February 7, 2006, Manley discovered the letter to her that was placed in another officer's internal mailbox. Manley testified that she became concerned for her safety after reading this letter. On cross-examination, Manley was asked at length about the content of the letter. After reading seven passages from the letter, she summarized them by saying that they were attempts by Werfel to initiate a romantic relationship with her and that none of the passages contained any threats toward her. In his letter to her, Werfel asked Manley to tell him if he was bothering her. Specifically, Werfel wrote "[t]he ball is in your court, think long and hard before you leap," "don't be scared of me I can't stand people who think I would be out to get them of [sic] cause them hurt on purpose," "so please if it's no or red light please write back and I know I will have to continue my search for my soul mate," "now it's just a thought up to you to decide if you want me to put my thoughts in action," and "with love intended regardless of which way you choose." *Page 14 
 {¶ 46} Thus, no threats were made by Werfel during any time. Manley testified that she was frightened, but she never missed work on account of Werfel's actions, she never retained the services of a doctor, psychologist, or other mental health professional. Manley admitted in her testimony that Werfel was not put on notice by her that his advances were unwelcome, nor that his actions were perceived as threatening, nor that he was causing her mental distress. As bizarre as Werfel's conduct may have been, it does not appear from the evidence that his conduct, objectively speaking, was threatening to Manley in any way.
 {¶ 47} Finally, there are two important facts that need to be emphasized. First, Werfel did not have any contact with Manley at a location other than the jail. At all times, there were other law enforcement officers present. The fact that Werfel expressed his interest to Manley in the presence of other law enforcement officers, at the jail, weighs against a finding that he knowingly threatened Manley. Second, there was no evidence that Werfel was ever told that Manley was not interested in him or that she preferred not to have contact with him, despite his invitation for her to do so. In this situation, it would have been very easy for Manley to explain her concerns to another officer and have that officer tell Werfel "she is not interested, please leave her alone." If such a statement was made to Werfel and he continued his behavior, a menacing by stalking charge may be appropriate.
 {¶ 48} There was insufficient evidence to support Werfel's conviction.
 {¶ 49} The judgment of the trial court should be reversed. *Page 1